UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMANDA B.,

                              Plaintiff,

                  v.

KILOLO KIJAKAZI,
Commissioner of Social Security,

                              Defendant.
_____

<u>DECISION AND ORDER</u>

20-CV-0569L

      Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

      On November 4, 2016, plaintiff, then thirty-nine years old, filed applications for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act, alleging an inability to work since September 1, 2013. (Administrative Transcript, Dkt. #11-2 at 15). Her application was initially denied. Plaintiff requested a hearing, which was held on January 24, 2019 via videoconference before Administrative Law Judge ("ALJ") Eric Eklund. The ALJ issued a decision on February 6, 2019, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #11-2 at 15-33). That decision became the final decision of the Commissioner when the Appeals Council denied review on March 25, 2020. (Dkt. #11-2 at 1-3). Plaintiff now appeals.

The plaintiff has moved for judgment remanding the matter for further proceedings (Dkt. #16), and the Commissioner has cross moved (Dkt. #21) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision exhaustively summarizes plaintiff's medical records, which reflect diagnoses of morbid obesity, conversion disorder, depression, anxiety, post-traumatic stress disorder, fibromyalgia, hemiplegic migraine headaches (migraine headaches resulting in weakness or paralysis on one side of the body), lumbar degenerative disc disease with protrusions at L5-S1, and asthma. The ALJ concluded that these constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #11-2 at 17-18).

Upon consideration of the record, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level, except that she may never climb ladders, ropes, or scaffolds, and can never crawl. She can no more than occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or operate foot controls. Plaintiff cannot be exposed to greater than moderate noise in the work environment, must be able to wear sunglasses to avoid bright lights, and cannot be exposed to extreme cold, heat, wetness, humidity,

concentrated fumes, odors, dust, gases, poorly-ventilated areas, concentrated chemicals, moving machinery, or unprotected heights. Finally, she is limited to simple, unskilled work involving no interaction with the public. (Dkt. #11-2 at 20).

Given this RFC, vocational expert Lynn Paulson testified that plaintiff could perform the light, unskilled positions of merchandise marker, inspector and hand packager, and office helper. (Dkt. #11-2 at 32).

For the reasons discussed below, I find that the ALJ's finding that plaintiff is not disabled was not supported by substantial evidence and was the product of legal error, and that remand is appropriate.

### I.     The ALJ's Findings at Step Three

Plaintiff's sole argument on appeal is that the ALJ erred when he failed to consider, at Step Three of the sequential analysis, whether plaintiff's hemiplegic migraines met or equaled Listing 11.02 for epilepsy.

At Step Three of the sequential evaluation process, an ALJ is required to analyze the claimant's medically determinable impairments to determine whether they meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §416.920(a)(4)(iii). In order to meet a listed impairment, a claimant "must show that [her] impairment meets or equals all specified criteria of a listing[;] . . . '[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Carter v. Colvin*, 2016 U.S. Dist. LEXIS 75664 at *33 (E.D.N.Y. 2016)(quoting *Sullivan v. Zebley*, 493 U.S. 521, 530, (1990)). However, an impairment that does not meet the criteria of a listing may nevertheless be "medically equal" to it. See 20 C.F.R. §416.926(a). To establish medical equivalence, a claimant must demonstrate that her impairment is "at least equal in severity and duration" to each of the

criteria of the relevant listing. *Id*. If an impairment is not specified in the listings, the ALJ must compare the medical findings of the claimant's impairment to the criteria of "closely analogous listed impairments" to determine whether "the findings related to [the claimant's] impairment[s] are at least of equal medical significance to those of a listed impairment." See 20 C.F.R. 416.926(b)(2); see also SSR 17-2p, 2017 SSR LEXIS 2 (March 27, 2017). The claimant bears the burden to prove that her impairments meet or equal a listed impairment. *See Ortiz v. Commissioner*, 2020 U.S. Dist. LEXIS 179547 at *8-*9 (W.D.N.Y. 2020); *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006).

While an ALJ need not articulate specific evidence supporting his finding that a plaintiff's impairments do not meet or equal a listed impairment, he must "provide a rationale that is sufficient for a subsequent reviewer or court to determine the basis" for his conclusion. *Ortiz*, 2020 U.S. Dist. LEXIS 179547 at *10 (quoting *Hall v. Saul*, 2019 U.S. Dist. LEXIS 175968 at *19 (N.D. Iowa 2019)).

Although there is no listing specific to migraine headaches, the most closely analogous listing, and the one commonly applied to headache disorders, is Listing 11:02 (epilepsy), which requires typical seizure activity, characterized by: (1) tonic-clonic (i.e., convulsive) seizures occurring once a month for at least three consecutive months despite adherence to prescribed treatment; (2) dyscognitive seizures (i.e., seizures causing mental impairment) occurring at least once a week for 3 consecutive months despite adherence to prescribed treatment; (3) tonic-clonic seizures occurring at least once very 2 months for at least 4 consecutive months despite adherence to prescribed treatment, along with "marked" limitations in physical functioning or in one of the four areas of mental functioning; or (4) dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, along with "marked"

limitations in physical functioning or in one of the four areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 §11.02.

Here, I find that the ALJ erred in failing to evaluate plaintiff's hemiplegic migraines under Listing 11:02, and that in any event, the record was insufficient to permit a well-supported determination of whether plaintiff's hemiplegic migraines were substantially medically equivalent to the criteria of the listing, either with respect to frequency and severity of symptoms, or with respect to plaintiff's compliance with prescribed treatment and the side effects thereof. *See generally* SSR 19-4p, 2019 SSR LEXIS 6 at *17 (August 26, 2019) ("[t]o evaluate whether a primary headache disorder is equal in severity and duration to the criteria in [Listing 11.02], we consider: a detailed description from an [acceptable medical source] of a typical headache event . . . the frequency of headache events; adherence to prescribed treatment; side effects of treatment . . . and limitations in functioning that may be associated with the primary headache disorder of effects of its treatment").

Evidence of record concerning the frequency, duration and severity of plaintiff's hemiplegic migraines and any side effects from the medications prescribed for them, as well as whether plaintiff was compliant with recommended treatment, is spotty and contradictory. Plaintiff's first hemiplegic migraine for which she sought medical treatment appears to have occurred on or about May 6, 2016 – more than two-and-a-half years after her alleged disability onset date. At that time, plaintiff presented with right-sided numbness, weakness and pain with incontinence, headache, nausea, and light sensitivity. (Dkt. #11-7 at 317.) After an extensive evaluation to rule out a stroke or other cause, she was diagnosed with hemiplegic migraines, which are migraines associated with paralysis or weakness on one side of the body. Plaintiff sought medical treatment for additional episodes in June 2016, October 2016, and January 2017. (It is

unclear whether plaintiff experienced other hemiplegic migraines during this period, and if so, how frequently.) Plaintiff was apparently prescribed medication for her migraines in or around June 2016. (Dkt. #11-8 at 544-46, #11-10 at 759, #11-11 at 965). By October 2016, plaintiff reported to her primary care provider that she had stopped taking her headache medications, but that her migraines had been "improving." (Dkt. #11-2 at 26, 11-9 at 611, 613).

At her consultative examination in February 2017, plaintiff described migraine headaches occurring 7-8 times per month (a number she characterized as "less" frequent than in the past), exacerbated by lights and sounds. Plaintiff was not taking any medication for her headaches, although it is unclear from the record whether any of her physicians had prescribed any during this period. (Dkt. #11-2 at 27, #11-10 at 786).

In April 2017, plaintiff confirmed to a treatment provider that she had discontinued all of her migraine medications, and complained that she had been experiencing right-sided weakness for two months. (Dkt. #11-2 at 27). At July 2017 and February 2018 treatment visits with treating neurologist Dr. Peterkin Lee-Kwen, it was determined that two of plaintiff's prior migraine medications were not working. Because she was still experiencing frequent, days-long migraine episodes, a higher dose of one of the medications was suggested. (Dkt. #11-11 at 965-70). In April 2018, Dr. Lee-Kwen found that plaintiff's headaches were still "not well controlled," and prescribed an increased dose of a third medication. (Dkt. #11-11 at 972). At a follow-up visit in June 2018, Dr. Lee-Kwen noted that plaintiff reported experiencing about 1 headache per week, although she stated that she was seeing improvement with her new medication. (Dkt. #11-11 at 974). Plaintiff testified at her January 2019 hearing to "episodes of weakness" related to hemiplegic migraines occurring 4-6 times per month, and indicated that she had required a home health aide since the summer of 2016. Plaintiff stated that she sees her neurologist every 2-3

months and takes medications to control her migraine symptoms, and she hadn't visited a hospital emergency room for migraines during the prior year. (Dkt. #11-2 at 21).

Because of gaps and omissions in plaintiff's treatment records, which do not specify whether plaintiff was being compliant with her prescribed course of treatment from month to month, and lack concrete details concerning the precise frequency of plaintiff's migraines and the extent of her resulting functional limitations – particularly, the extent and duration of her right-side weakness or paralysis during and after hemiplegic migraine episodes, and the side effects of her medications – the record was insufficient for the ALJ to make a well-supported determination of whether plaintiff's migraines were medically equivalent to the frequency, severity and compliance criteria of Listing 11.02.

The lack of pertinent medical opinion evidence further exacerbates the problem. The medical opinions of record concerning plaintiff's physical RFC, all of which the ALJ gave "considerable" or "great" weight, were authored by: (1) Lindsey Pietras, a treating physician's assistant who did not treat plaintiff for her migraines and was not an acceptable medical source under the SSA regulations at the time of the ALJ's determination; (2) consulting physician Dr. Michael Rosenberg, who examined plaintiff once in February 2017; and (3) State Agency medical consultant Dr. C. Nehajl, who merely reviewed the record. All of these sources opined that plaintiff should avoid visual, auditory or respiratory migraine triggers, and the ALJ did incorporate those limitations into his RFC finding. However, the record contained no opinion from Dr. Lee-Kwen, or from any other medical care provider who had treated plaintiff for her migraines or could render a knowledgeable opinion concerning their frequency, the limitations they caused, plaintiff's compliance with prescribed treatment over any particular period, and the side effects, if any, of plaintiff's treatment regimen.

In short, the ALJ's implicit Step Three assumption that plaintiff's hemiplegic migraine headaches do not meet or equal the criteria of Listing 11.02 was not supported by substantial evidence, and the Court is unable to "conclude that the outcome would have been the same had the ALJ applied the proper medical equivalency standard." *Ortiz*, 2020 U.S. Dist. LEXIS 179547 at *17, *24 (reversing and remanding the Commissioner's determination for further proceedings, where the ALJ applied an incorrect standard in determining whether the claimant's migraine headaches were medically equivalent to Listing 11.02 criteria). Remand is therefore necessary.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision with respect to plaintiff's disability application for the period in and after plaintiff's diagnosis of hemiplegic migraines in May 2016 was not supported by substantial evidence, and was the product of legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #16) is therefore granted, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #21) is denied.

The Commissioner's decision that plaintiff is not disabled is affirmed for the period prior to May 2016, and is reversed and remanded for the period beginning in and after May 2016,[1] for the purpose of assessing whether plaintiff's migraines met or equaled the criteria of Listing 11.02 at Step Three, and then redetermining plaintiff's claim based on the outcome of that assessment.

In order to facilitate a determination supported by substantial evidence, the ALJ is instructed to supplement the record by requesting medical opinion evidence from plaintiff's

---

[1] The plaintiff does not argue, nor does the record contain substantial evidence to suggest, that plaintiff suffered from frequent or disabling migraines – or that she was otherwise disabled by any other medical or mental health condition – prior to her initial hemiplegic migraine episode in or around May 6, 2016. As such, I find that the ALJ's determination that plaintiff was not disabled prior to that time was supported by substantial evidence and was not the product of legal error. I therefore affirm the ALJ's decision that plaintiff was not disabled, insofar as it relates to the period prior to May 2016.

migraine treatment providers, including but not limited to Dr. Lee-Kwen, and by obtaining such other evidence as the ALJ deems necessary and sufficient to complete the record with respect to the frequency, severity, and treatment of plaintiff's hemiplegic migraines. The ALJ must then redetermine plaintiff's claim for the period in and after May 2016, beginning with Step Three of the sequential analysis, and issue a new decision.

    IT IS SO ORDERED.

                                      _____
                                              DAVID G. LARIMER
                                           United States District Judge

Dated: Rochester, New York
       October 20, 2021.